The Honorable, the Judges of the United States Court of Appeals for the 4th Circuit. All set. Be seated please. All right, the first case we're going to hear is United States v. Reid. Mr. Brown. Thank you. In January of 2016, Quantrell Reid pled guilty to 18 U.S.C. 922G, which is a statute namely possession of firearm by felon. A pre-sentence report was prepared, and it found Reid to be an armed career criminal based upon three convictions of a Virginia statute. Reid objected to the pre-sentence report findings, and Reid argued that he did not qualify as an armed career criminal because he did not have the requisite qualifying felonies. The District Court overruled the objection and found Reid to be an armed career criminal. Reid appealed, and we are here today. Good morning, Your Honors. The issue that I want to tackle today is whether the Virginia statute qualifies as a violent felony according to the Armed Career Criminal Act. In order for the statute to be a qualifier under the Armed Career Criminal Act, there must be an element of physical force present. So the question then is, does this Virginia statute have an element of physical force? Could I just ask, for purposes of clarification, you challenged the sentence also on the basis that the District Court erred by accepting the PSR's description of the prior convictions without relying on the charging documents. Do you plan to address that, or are you resting on your brief in that regard? I may address that if I have time towards the end. I would prefer to put the brunt of my argument on the armed career. Well, since you may not get back to it, can I just ask you a question about that? Are you – is your position that there is an actual factual question as to the basis for these prior convictions? Or are you arguing, you know, even if there's not, this still is procedurally irregular? I'm arguing even if there's not, this is still proceeding. Okay. So there is no actual factual question. Correct. Okay. Yes. Okay. Thank you. Well, are we to assume that the prior convictions were under 18.2-55? Yes. Yes. And, again, getting back to the armed career criminal issue, that Virginia statute, 18.2-55, the question is, does that statute have an element of physical force? My answer would be no. And we first have to look at, then, what are the elements? The prima facie case would be there's a prisoner, two who knowingly and willfully inflicted injury on an officer. And the statute goes a little deeper than that, but for simplicity purposes, a prisoner who knowingly and willfully inflicted injury on an officer. There's no requirement of force needed to fulfill these elements. Do you have any case where the Virginia courts have actually interpreted the amount of force necessary for a conviction under 18.2-55? I don't have any cases, but I do understand that there's a case, there's a Virginia case, I think I may have noted it in my brief, that pretty much gives the statute, gives the, says that there has to be an underlying assault coupled with an injury, and that's pretty much all that. In regard to 18, in the context of this specific statutory provision? Yes, I believe that Siggers v. Commonwealth, that gives, that kind of gives us what we need to get to the 18.2-55. Let me ask you a question in the abstract. Do you think more force is involved when someone inflicts injury or when someone causes injury? I'm not sure if there is a difference between the two.  My question is if someone inflicts injury or causes injury, is one or the other more susceptible to being construed as the use of force? I don't think one or the other is. Are they roughly equal, you think? I think they could be equal. You know, in Castleman, the court construed a Tennessee statute, almost identical, but the only difference was the use of causing injury. They're a person who caused injury, and here, this statute in Virginia is a person who inflicts injury. And my question is if they're roughly the same, it seems to me Castleman's dead on, because it held that that statute involved the use of force. I think that in reviewing Castleman, it is limited as far as I read it, or it is based or focused upon a domestic violence entity. Castleman, it's based on a statute that had that language, and that was the language it construed. It was a domestic violence issue, but the language construed was intentionally or knowingly caused bodily injury. And that was the language, and the court said that that language necessarily involves the use of physical force. I believe that Torres-McKell addresses the issue. Well, Torres-McKell is a court decision by us before Castleman. So I understand Torres-McKell, but I'm asking you about Castleman. That's a Supreme Court case that came after Torres. I believe that Castleman focuses. I think Justice Sotomayor wrote the opinion. I think that that case focuses strictly on the Castleman actually talks about separating regular violence from domestic violence, and Castleman actually gives several different examples. One example Castleman uses is minor uses of force may not constitute violence in the generic sense. And Castleman uses as an example the squeezing. The central holding of Castleman is Tennessee statute, the language, the operative language of which was intentionally or knowingly causing bodily injury. And the question was whether that necessarily involved the use of physical force. And sure, it's a domestic violence statute, and it is another context, but that's what the court focused on, that language. And it held squarely that that language involves the use of force. Castleman also speaks of violence standing alone constitutes a substantial degree of force. And I don't believe that the Virginia statute has an element of holding a substantial degree of force. It has a identical language except the word inflict as opposed to cause. It says the Virginia statute says to inflict bodily injury. That's the element of the statute you have to violate. And the Tennessee statute was to cause bodily injury. Counsel, in terms of Castleman, isn't your ‑‑ Castleman goes out of its way to say I'm distinguishing, the court says, we're distinguishing the Armed Career Criminal Act force clause because we don't construe that one in light of the common law. That's what we held in Johnson. Whereas here we are using the common law definition of force and battery and all of those things. I mean, isn't that ‑‑ I guess I don't understand why you're so deep in the weeds of Castleman. Castleman goes out of its way to say this is not about the ACCA force clause. We're not reaching that. This is about a force clause that we are going to construe in light of common law principles, which we don't do under the ACCA. So why are you ‑‑ you're not understanding what I'm saying? I'm not understanding. Okay. Let's move on. It's a ‑‑ It's being ‑‑ It's a curiosity of a case because the court said we're not reaching the ACCA. They're just reaching the force clause in a domestic relations context. But my point was that the language they had to determine whether it involves physical force was a Tennessee statute, which was virtually identical to this one. If I may, Your Honor, comment on a citation of supplemental authorities that mention Torres Miguel. Torres Miguel comments. It actually comments on a Colorado statute, but it still makes ‑‑ Oh, no, but Torres is problematical because there's tension between Torres and Castleman. And so it seems to me at this point we ought to decide whether Castleman is applicable or not. Judge Harris raises the question. They did have that dictum saying we're not reaching ACCA, and you have an ACCA provision here. Now, the question is we do have ACCA before us. But my question really comes to you is what are we to do now when the Supreme Court took language that we're faced with here and said that language constitutes the use of physical force? I believe at this point Torres Miguel is still binding. And I think that in the government's brief it actually addressed Castleman and the standard of violence used in domestic ‑‑ the government's rationale, I think, that says that the standard of violence used in a domestic violence setting is the same standard of violence that should be applied to all crimes when we're determining whether force is present. And I don't believe that is necessarily ‑‑ I don't believe that that rationale is correct. I think there is a different standard of violence that we have to address. I believe Castleman, and I hold to that, that Castleman puts its ruling kind of sort of in a box and says that we're talking here about domestic violence because domestic violence is an art. It's not ‑‑ But it's not the crime. It's the language that we're focused on. But my question is, is it helpful to look at other crimes in Virginia that may define inflicting bodily injury? Is that instructive in any way? I don't know if that would be instructive or not, Your Honor. I believe that ‑‑ well, if you look at the actual crime in Virginia of the 18.2-55, all it requires is an injury, any kind of injury, any way you can get there, with force, without force. I believe that all of that statute requires is an injury. And my argument is you can get to an injury without actually causing force. The causation ‑‑ there's a difference between the causation of injury and the injury's causation by physical force. We still have to look at the Virginia statute to see if physical force is a part of that statute. And I don't believe that in that statute physical force is a part of that. I mean, aren't there cases, not under this statute, but other cases in Virginia construing the same language about bodily injury and construing it very broadly? It doesn't require an observable wound, a cut or breaking of the skin. It doesn't require anything like that. It's any bodily hurt whatsoever. It would cover a bruise. It would cover anything. Is that language of no use to you? That was my question. I believe that the amount of injury that is sustained is not, if I'm answering that. No, you're not. The question is, is there other Virginia case law that provides guidance with respect to the interpretation of that phrase? Okay, thank you. I don't know of any, Your Honor. That would be, I guess, a simple and direct answer. I don't know of any that would have provided case law in terms of getting to the amount of injury that is required. Is there a realistic probability that the amount of injury required to inflict bodily harm would not involve violence, forceful injury? I believe there is a realistic way to get there. I mentioned in my brief several different ways to get there. For example, loosening the rails of a chair if someone sits in and gets hurt, not violent. Pouring, perhaps, water on the floor, causing someone to slip and get hurt, not violent. I think that Castleman even suggests that squeezing of an arm causing a bruise. Well, I'm having a little trouble with that and the term inflicting, which leads me, in all honesty, if I were answering Judge Niemeyer's question, it seems to me, perhaps incorrectly, and tell me if you think I'm wrong, that inflict involves, at least connotes, an instance of more direct application of harm than causing, which could include a chain of events. Do you see the distinction I'm making? Yes, I see the distinction. Can you help me with it? I respectfully disagree with you, if I'm allowed to. I imagined you might. So where does my line of thinking go off rail? I believe that inflicting it and causing it, if you cause it, you can still inflict it. It may be inflicted indirectly, which would be an adjective to describe how you inflict it, but I think that any time you cause it or inflict it, I think they're one and the same. Okay, so that leads you right back into the problem that is Castleman. In order for that to help you, you have to distinguish Castleman, don't you? I mean, if you're agreeing that the language that the Supreme Court was interpreting in Castleman is, in fact, as you're now saying, indistinguishable, then that makes distinguishing Castleman more critical for your argument, it would seem to me. And I would, I know my time is up, I would suggest that Castleman talks about this specific issue in the realms of 922A9, where there is a misdemeanor. Where there is the same, but we don't, we look at the, we're looking at the same phrase, which, and it's that same phrase that led me back to the question that I think that Judge, well, she was repeating, and that is, is there language in Virginia, not necessarily in 18.2-55, that has been interpreted that would provide guidance, which you're saying not that you know of. Not that I know of, no. And if there are... Okay, thank you. You have some rebuttal. Okay, thank you, Your Honor. Yeah. Mr. Enright. Thank you, Your Honor. May it please the Court. Anthony Enright for the United States. This Court should affirm the District Court's determination that Mr. Reed was subject to the Armed Career Criminal Act because his three previous convictions under the Virginia statute are convictions for violent felonies. They required the use of physical force against the person of another. I think we both agree the offense has an element, the knowingly and willfully inflicting bodily injury. And as Your Honor's alluded to, the statute at issue in Castleman, or Castleman's explicit holding was the knowing or intentional causation of bodily injury necessarily involves the use of physical force. Can you distinguish Torres-Miguel, or is your entire argument that Castleman has superseded Torres-Miguel? I don't think that Torres-Miguel is distinguishable in a material way. Unless we believe Castleman has superseded Torres-Miguel. I have thought of a way to do that, or I have tried to think of a way to do that, but I haven't really been able to come up with one. I mean, Torres-Miguel does involve a California statute. It involves a threat, and it involves the threatened use of force component of the statute. So the facts are not before this Court. But to the extent that I think Torres-Miguel could possibly aid the defense in this case, I do think Castleman supersedes it. The question that it left open, which is, can intentional infliction of bodily injury require violent force, I think that's answered by the other Supreme Court decision on the subject, which is Johnson, the 2010 Johnson. The Supreme Court didn't think so when it left it open in Castleman, right? I don't understand. Well, it didn't. I think the Supreme Court didn't address the issue because it just. It left open a closed question? Well, it was that question. That question wasn't. I'm sorry, Your Honor. I didn't mean to. It's a peculiarity. I think these questions are very important, and I'm laughing because I've had the very same difficulty with the language in Castleman. The holding, the direct holding, not the side language, is that the Tennessee statute, which is virtually identical, has as an element the use of force. But then they say we're not going to reach the force clause in ACCA 924E. And, of course, it's hard to explain. I mean, what I understood to be going on, and please tell me if I'm wrong, because I have struggled with Castleman, too, so this is a genuine question. I thought what the court in Castleman was saying, we have held that under ACCA we don't incorporate common law principles of what force means under ACCA. It's a statutory thing. We look at the intent of Congress. We're just not relying on the common law rules. But this statute, for purposes of this statute, we will rely on common law rules. And there's a lot of language in Castleman about this counts as force under common law. So I thought that that sort of explains why they think they haven't quite answered the ACCA question yet, because they're relying in Castleman on common law principles that they had previously said would not govern under ACCA. Isn't that basically the problem the court's running up against in Castleman? I think that's true with respect to the one phrase, which was physical force. And what the Castleman decision says was, well, we ordinarily presume that if it uses a term of art, a common law term, that does apply. And we decided not to do that in Johnson 2010 because that would be an unusual result. Here it wouldn't be an unusual result. So we don't need, I'm sorry, Your Honor. No, no, please. Please finish your sentence. I'm sorry. I have a tendency to blurt. Oh, I was just saying that I think what they said was then we don't need to decide, we don't need to reach the question of whether intentionally causing bodily injury is violent force. And Justice Scalia concurred in that decision and said, that's the easiest way to reach it. Of course it would cause violent force. We defined violent force in Johnson 2010 to mean force capable of causing pain or injury. And this statute, which also had a broad definition of bodily injury, clearly causes pain or injury. It's a necessary element. Could I follow up on the reason that I'm having conceptual difficulty with this is because of the specific limitations in Castleman, it leads us back to the, does it not, to the Virginia common law, and what Virginia courts have done with similar language, not under this statute because we don't have it under this statute as I understand it, but other statutes having similar language. So can you speak to that? Certainly, Your Honor. Virginia statutes, what they, or what the Virginia courts have done, I mean, I think I cited Dawson, but I think there's a few other decisions out there have said that bodily injury takes its ordinary meaning. And there are about, there are not many, but there are about seven or eight maybe decisions on this statute, 18.2-55 that talk about the injury that occurred to describe the facts. And they almost always involve a prisoner either throwing something at a prison guard or striking them. And in every single one of those cases, there is pain or physical injury. Either there's a laceration or there's a witness saying, I experienced pain from this that occurred. And that is the floor set by Johnson for what constitutes violent force. It's force capable of causing pain or injury. Right. But aren't there other cases in which the Virginia courts have opined as to how broadly they construe the concept? I have seen decisions stating that they construe it broadly, anything that would fall within the scope of injury. It is entirely possible, but I just haven't seen them or have overlooked them. I can't say that I've looked at every decision I could find on the term bodily injury in all contexts. But I'm not, I'm sorry. But you're not aware of any that you would not distinguish? I'm just trying to get some parameters about what you're relying on and why. I am not aware of any decisions that hold that bodily injury occurs without pain or some type of physical injury. And I guess the benchmark I might look at is the definition in the Castleman case. It was very broad. Bodily injury is a cut, an abrasion, a bruise, a burn or disfigurement, physical pain or temporary illness or impairment of the function of a body member, organ or mental faculty. And that's what Justice Scalia, the author of the 2010 Johnson decision, says clearly that's pain or physical injury. Let me just ask you then, doesn't Virginia include bruises and other slight injuries? I wouldn't have reason to think otherwise, Your Honor. I think a bruise would be, but it would be an injury nonetheless. But can a defendant be convicted under state law using less than, would that be violent force? It would, Your Honor, because it includes injury. It's not dismemberment. I'm sorry. So you're defining violence as that which causes injury, even though it would appear that a bruise, help me with the violent, defining it in context of the result of the application of whatever exertion occurred. Certainly, Your Honor. I define violent force as force capable of causing physical pain or injury to another person. That's a quote from Johnson 2010. Counsel, here's a quote from Castleman. Certainly. And this is not the Justice Scalia concurrence. This is the majority opinion. Minor uses of force may not constitute violence in the generic sense. For example, in an opinion that we cited with approval in Johnson, the Seventh Circuit noted that it was hard to describe as violence a squeeze of the arm that causes a bruise. So, I mean, I do feel like at a minimum there's some mixed messages on this. Perhaps, Your Honor. I think what I would go back to in that sense is that the holding of Johnson 2010 is that the force required is force capable of causing pain or physical injury. I do. And I suppose I would be reluctant to suggest that the floor could be higher than that. Well, it just depends, right, what Johnson meant by injury, and then this is what Judge Duncan and I have been kind of pushing you on, what Virginia means by injury. Those may be two different concepts. I don't know the far reaches of it. The reason I would suggest that a bruise falls within the scope of injury is because I think that an ordinary person looking at the definition of injury, which is what I think Johnson 2010 leaves us with, and it's how the Virginia courts define the term of injury, I think a reasonable person would look at that as an injury. It's not a huge injury. It's not necessarily a grievous injury. But what Johnson 2010 said was not dismemberment or a serious injury. It didn't say torture. It said injury. And it said pain. It didn't say excruciating pain. We're not looking at the common law principles here because this is a congressional statute and what Congress was after was sort of the really bad guys you wouldn't want to trust with a gun, that kind of a guy. And it's a little bit hard to reconcile that with, you know, I touched someone's arm and bruised them. Well, it's something to acknowledge in this case is that the statute requires intent. This is not a situation where you touch somebody's arm and bruise them unless you've intended to bruise them, to actually cause them injury, or you know that's the result that's likely. Is that a distinction made in Virginia law, to your knowledge? Yes. Okay. Would you acknowledge, though, that Castleman doesn't quite get us all the way there? I agree. Castleman doesn't get us all the way there because Castleman doesn't answer the question of violent force. I think you need to couple Castleman with the decision in Johnson 2010 to determine what violent force is, and I think the appropriate definition is the language the Supreme Court used, which is physical pain or injury. The definition in Johnson for violent force is just about the way Tennessee thought of as injury, common law sense of injury. They've talked about bruising and this type of thing. And your point, I gather, is this isn't an accidental touching or accidental bruising. It's an intentional infliction where there is targeting somebody to cause bodily injury. That, in and of its nature, creates some of the violence. That is correct, Your Honor. I mean, I think that shows its consistency with the kind of offense that Congress sought to treat as a violent felony. I mean, this is somebody who necessarily, by the virtue of the elements, intended to cause somebody injury and did cause somebody injury three times and then illegally possessed a firearm. Can I ask you a question about the relationship between Torres Miguel and Castleman that I think is important and I'm really struggling with? Certainly, Your Honor. If we were coming to this cold, if we didn't have Torres Miguel in front of us, and we were just trying to figure out, we're reading Castleman. The Court purports to have left open this question, but I don't know. I'm looking at the reasoning. Maybe it's pretty clear how they would come out. Is that a different inquiry than the one that is actually facing us, which is we have panel precedent that you say is not distinguishable. It's directly on point. So what we have to ask may be a different question than how would we approach Castleman as a matter of first impression. It's whether Castleman has directly, effectively overruled Torres Miguel. So those two decisions are no longer reconcilable. I guess it seems to me, and tell me if I'm wrong, that it's sort of a higher burden in this context to say that the Supreme Court has sub silentio superseded one of our precedents, where the Court itself says we're leaving that question open. I mean, that seems like a hard case to make. Your Honor, this Court does have the authority to not apply a prior decision if it is undercut by Supreme Court precedent. Or called into question. Or called into question. The standard is, I'm afraid, not at the tip of my tongue, but it is something less that the Supreme Court certainly doesn't need to mention over resolving a circuit split against the Fourth Circuit. How explicit does this, I guess part of the question is, how explicitly does it have to be called into question? Because you do have a case that reserves the precise issue. Carves it out of consideration of the case before it. That's true, Your Honor. I would also note, however, that this is not a situation where we are looking at the same statute or even the same provision of the Armed Career Criminal Act, the same clause of the Armed Career Criminal Act as Torres-Miguel. So it, in a sense, wouldn't directly overrule Torres-Miguel to the extent that Torres-Miguel applied to the facts before it, and this case applied to the facts before it. I'm not sure that there is an enormously, I'm not aware of a principled distinction between the rationales between the two. Both decisions used the same hypothetical as a significant part of their rationale, and they came to completely different conclusions on that, the poisoning example. But I do not think that the Court needs to look further than Castleman to apply it to a statute that's virtually identical to Castleman. I gather it's the analysis and the approach taken by Castleman that really hurts Torres, because now Castleman has focused on language that's the same. The distinction is common law notion of force as opposed to violent force defined in Johnson. But now it seems to me while they didn't actually get to that second step, the violent force, the definition of the violent force in Johnson ends up in the same place that the Supreme Court ended up in Castleman with the same words and the same results. They talked about bruising and all this other stuff, and Justice Scalia basically observed that's what they were doing. He said it was an easy step to take that step, but the majority decided not to take this step explicitly. But it seems to me the rationale that we would have to apply to be faithful to Castleman certainly puts in question, we could leave it to another day it seems to me about Torres, but it seems to me in this particular case we have a statute so close to that address, language so close to that address, that to argue that the statutory language versus the common law language are defined so similarly in this particular application, it's hard to avoid it. I think that's true, Your Honor. I mean the focus I think of Torres-Miguel was on something that Castleman didn't distinguish. What constitutes a use of force? And what Castleman held was that knowingly employing a device to cause physical harm is a use of force, even if there's not direct contact between the perpetrator and the victim. And I think that does undermine the rationale of Torres-Miguel quite a bit. But Your Honor is very correct that here we have a situation where the statute is virtually identical to what we're talking about in Castleman. And the distinction, to be fair, the distinction has to be in the definition, common law definition of force versus violent force in Johnson. I think that's correct, Your Honor. So the question is when you conduct that examination, because that clearly is what Castleman directs us to do, they say we haven't conducted that analysis. But if we conduct that analysis using the Johnson factors, we end up in the same place as Castleman because Castleman applied it in a common law context in the Tennessee statute. I think that is correct, Your Honor. And Torres-Miguel did not speak to the issue of the degree of force required. So I'm not sure that there's a strong argument for applying Torres-Miguel in a way. Do you think this would be a good final exam question in law school? Absolutely. You know, there's not a lot of facts here when you have these statutes. That's the problem. You get a few pages of facts. I don't ‑‑ I have a little bit of time left, but if the Court doesn't have any further. If you don't have anything further, that's fine. And we'll hear ‑‑ we have Mr. Brown for a little bit. Certainly. I mentioned briefly I have ‑‑ I do have the ‑‑ I do address the issue about the factual finding of them in my brief. So thank you, Your Honor. I ask the Court affirm the decision of this report. And Mr. Brown, we'll invite you back for continuing the dialogue. Glad to be back. Let me ‑‑ I do want to address that Johnson 2010 did actually speak about force. And it quotes, even by itself, the word violent connotes a substantial degree of force. And it also says that when the adjective violent is coupled with the noun felony and you put them together, the connotation is of a strong physical force. The connotation of strong physical force is more clear. That was a question, I think, or an answer that the government gave in terms of he stated that violence was that which was to cause any injury. And I don't necessarily agree with that. I still hold to the fact that there can be injuries caused without at least what Johnson 2010 says, strong physical force. If the Court would have any other questions, I have a little bit of time, it looks like, left here. Thank you. Thank you. I want to ‑‑ I understand you're court appointed. I am, Your Honor. I want to recognize your service to the Court and we thank you very much. Well, thank you very much, Your Honor. All right. We'll come down and greet counsel and then proceed to the next case.
judges: Paul V. Niemeyer, Allyson K. Duncan, Pamela A. Harris